UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHEILA B. McGREAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      No. 11 C 08317 |
| | ) |
| AT&T CORP. and ILLINOIS BELL | )      Judge Ruben Castillo |
| TELEPHONE d/b/a AT&T ILLINOIS, | ) |
| THE VILLAGE OF ORLAND PARK, | ) |
| TIMOTHY J. McCARTHY, THOMAS | ) |
| MELODY, AND DENNIS V. STOIA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Sheila B. McGreal brings this action against AT&T Corp. and Illinois Bell Telephone

Company, d/b/a AT&T Illinois, (collectively, AT&T); Dennis V. Stoia, an arbitrator employed

by Orland Park, Illinois; the Village of Orland Park, Illinois ("Orland Park"); Timothy J.

McCarthy, Chief of Police of the Village of Orland Park; and Thomas Melody, Orland Park's

attorney.[1] McGreal alleges violations of 42 U.S.C. § 1983 and 18 U.S.C. § 2702(a)(3), as well as

state law tort claims of intrusion upon seclusion, *respondeat superior*, defamation *per se*, and

indemnification. (R. 1, Compl.) Presently before the Court are Orland Park, McCarthy, and

Melody's (collectively "Village Defendants") motion to dismiss pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6), (R. 23, Village Defs.' Mot.), and AT&T's motion to

---

[1] The Complaint identifies Melody as McCarthy's attorney. (R. 1, Compl. ¶ 12.) The
Court infers from his signature on a sur-reply from the arbitration submitted on behalf of Orland
Park, however, that Melody is actually Orland Park's attorney. (R. 48-2, Pl.'s Resp., Ex. B,
Orland Park's Sur-Reply in Opp'n to Pl.'s Mot. to Quash Subpoena in Arb. Proceedings.)

compel arbitration. (R. 26, AT&T's Mot.) For the reasons discussed below, AT&T's motion to compel arbitration is granted, and the Village Defendants' motion to dismiss is granted in part and denied in part.

## RELEVANT FACTS

Stoia was an arbitrator employed by Orland Park to arbitrate grievances, a labor complaint, and "charges of misconduct involving the possible discipline of a [p]olice [o]fficer." (R. 1, Compl. ¶ 14.) On September 28, 2010, McGreal became aware that Orland Park had requested that Stoia issue a subpoena *duces tecum* for records related to McGreal's AT&T cell phone account. (*Id.* ¶ 15.) On October 12, 2010, McGreal filed a motion to quash the subpoena *duces tecum* with Stoia and sent the motion to AT&T. (*Id.* ¶ 16.) On October 25, AT&T notified McGreal that they would not release any records to Stoia until he ruled on McGreal's motion to quash. (*Id.* ¶ 22.)

On November 25, 2010, AT&T mistakenly released McGreal's cell phone voice and text message records to Orland Park. (*Id.* ¶ 23.) On December 3, 2010, McGreal wrote to Orland Park, Melody, and Stoia to request that they immediately return the AT&T records. (*Id.* ¶ 26.) Instead, Orland Park "made [McGreal's voice and text records] public." (*Id.* ¶ 27.) In addition, McGreal avers that Defendants publicly alleged that she "concealed lies," "made false statements," and "engaged in a conspiracy," and made other similar accusations. (*Id.* ¶ 30.)

## PROCEDURAL HISTORY

McGreal filed her *pro se* complaint on November 21, 2011. (R. 1, Compl.) In Count I, McGreal alleges an unreasonable search and seizure in violation of the Fourth Amendment and

asserts claims under 42 U.S.C. § 1983 against "one or more of the Defendants." (*Id.* ¶¶ 31-34.) In Count II, McGreal alleges conspiracy pursuant to 42 U.S.C. § 1985 against all Defendants. (*Id.* ¶¶ 35-39.) In Count III, she alleges a prohibited disclosure of private telephone records in violation of the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2702(a)(3), against AT&T. (*Id.* ¶¶ 40-42.) In Counts IV-VII, McGreal alleges supplemental state law claims. She alleges an intrusion upon seclusion claim against "one or more Defendant" (Count IV), (*id.* ¶¶ 43-46); a *respondeat superior* claim against Orland Park (Count V), (*id.* ¶¶ 47-49); a defamation *per se* claim against "[o]ne or more of the Village Defendants" (Count VII), (*id.* ¶¶ 50-52); and an indemnification claim against Orland Park (Count VII), (*id.* ¶¶ 53-61).

Stoia filed a response to McGreal's complaint on January 30, 2012. On January 31, the Village Defendants filed a motion to dismiss Counts I, II, and IV pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing, and to dismiss Counts I, II, IV, VI, and VII pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (R. 23, Village Defs.' Mot.) That same day, AT&T filed a motion to compel arbitration of all claims against them pursuant to an arbitration agreement between AT&T and McGreal, and to stay the proceedings between those parties pending the arbitration. (R. 26, AT&T Defs.' Mot.)

In her response to the Village Defendants' motion, McGreal concedes that her Section 1985 claim (Count II) should be dismissed and that Orland Park is entitled to absolute immunity from her defamation *per se* claim (Count VI). (R. 48, Pl.'s Resp. at 4.) In light of McGreal's concessions, the Court dismisses Count II and the portion of Count VI alleged against Orland Park.

## DISCUSSION

## I.  AT&T's motion to compel arbitration

AT&T contends that McGreal's claims against them involve her AT&T cellular telecommunications service, which was provided by another AT&T affiliate, AT&T Mobility. (R. 26, AT&T's Mot. at 1.)  AT&T further argues that McGreal agreed to resolve her disputes with AT&T in arbitration as part of her service contract. (*Id.* at 2.)

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility, LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011) (internal citations and quotations omitted).  The FAA broadly provides that an arbitration clause in a contract involving a commercial transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2.  The FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  Unless arbitration agreements are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," courts must enforce them according to their terms. *AT&T Mobility*, 131 S.Ct. at 1745-46 (internal citations and quotations omitted).  If the Court is satisfied that the parties agreed to arbitrate, it must promptly compel arbitration. 9 U.S.C. § 4.  A court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032-33 (7th Cir. 2012) (internal citations and quotations omitted).

4

AT&T seeks an order compelling McGreal to arbitrate her claims against AT&T before pursuing a lawsuit. (R. 26, AT&T's Mot.) To compel arbitration, a court must determine that the parties entered into an agreement to arbitrate, and that the dispute between the parties falls within the scope of the arbitration agreement. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S.Ct. 2847, 2856 (2010); *see also Janiga v. Questar Capital Corp.*, 615 F.3d 735, 738 (7th Cir. 2010). AT&T contends that McGreal agreed to the AT&T Terms of Service, including the arbitration provisions, when she added the telephone number in question to her account. (R. 27, AT&T's Mem. at 1-2.) Attached to AT&T's motion is McGreal's wireless service agreement, signed by McGreal, agreeing to all Terms of Service. (R. 27-1, AT&T's Mem., Ex. A-2.) The Arbitration Agreement contained in the Terms of Service expressly states that it is "intended to be broadly interpreted" and covers "all disputes and claims" between the customer and AT&T. (R. 27-1, AT&T's Mem., Ex. A-1 at 8.) Broadly worded arbitration clauses are interpreted to have a wide reach and create a presumption of arbitrability. *Gore*, 666 F.3d at 1033-34. McGreal has not responded to AT&T's motion to compel arbitration, nor does she challenge the existence of the service contract or the Arbitration Agreement therein. Because McGreal does not dispute the existence or validity of the Arbitration Agreement that covers her claims against AT&T, and the disagreement at issue is clearly covered by the Arbitration Agreement, the Court grants AT&T's motion to compel arbitration and stay the proceedings as to all claims against AT&T pending arbitration.

## II. Village Defendants' motions to dismiss

### A. Legal standards

A motion to dismiss pursuant to Rule 12(b)(1) asks the court to dismiss an action over

which it allegedly lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of establishing standing is on the plaintiff. *See Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). All reasonable inferences are drawn in favor of the plaintiff, and all well-pleaded allegations are accepted as true. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *see also Apex Digital v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009) (labeling a motion to dismiss for lack of subject matter jurisdiction in which the court need only look to the complaint a "facial challenge").

If the defendant denies or controverts the truth of the plaintiff's jurisdictional allegations, however, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital*, 575 F.3d at 443 (internal citations and quotations omitted) (referring to such a motion to dismiss as a "factual challenge"). Once such evidence is offered, "[t]he presumption of correctness that we accord to a complaint's allegations falls away," and the plaintiff bears the burden of coming forward with competent proof that jurisdiction exists. *Id.* A factual challenge to jurisdiction lies where "the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction." *Apex Digital*, 572 F.3d at 444 (quoting *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003)).

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all

reasonable inferences in the non-movant's favor. *Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). To survive a motion to dismiss for failure to state a claim, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level[.]'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). "Plausibility" in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* In other words, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

Generally, when ruling on a Rule 12(b)(6) motion to dismiss, a court may only consider the plaintiff's complaint. *Rosenblaum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). Rule 10(c) of the Federal Rules of Civil Procedure provides, however, that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Seventh Circuit precedent "makes clear that this rule includes a limited class of attachments to Rule 12(b)(6) motions." *Rosenblaum*, 299 F.3d at 661. Specifically, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). This is a narrow exception that "is not intended to grant litigants license to

7

ignore the distinction between motions to dismiss and motions for summary judgment." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). "This rule—which typically applies to attachments to motions to dismiss—logically extends to documents attached to a plaintiff's response." *Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. Mar. 23, 2010) (citing *Krok v. Burns & Wilcox, Ltd.*, No. 98 C 5902, 1999 WL 262125, at *6 (N.D. Ill. Apr. 16, 1999)). Because the phone and text messaging records attached to the Village Defendants' motion to dismiss are central to McGreal's claim and referred to extensively in the complaint, the Court will consider them when making determinations on the Rule 12(b)(6) motion.

## B. McGreal's Fourth Amendment claim pursuant to Section 1983 (Count I)

In Count I, McGreal alleges that her "private cellular telephone records and text messaging records were searched and seized by one or more of the Defendants in a manner which violated the Fourth Amendment." (R. 1, Compl. ¶ 31.) She contends that such actions were unreasonable and taken with willful indifference to her Fourth Amendment rights. (*Id.* ¶ 33.) The Village Defendants argue that the claim should be dismissed because McGreal lacks standing to bring the claim, because she failed to allege facts sufficient to make out a Fourth Amendment claim, and because they are entitled to qualified immunity. (R. 23, Village Defs.' Mot.)

McGreal brings Count I against "one or more of the Defendants." (R. 1, Compl. ¶ 32.) McGreal names McCarthy in his official and individual capacities, (*Id.* ¶ 11), but does not specify whether Melody is sued in his official or individual capacity.[2] The Court assumes that he

---

[2] The Complaint does state, however, that "[a]ll of the Defendants' interactions with Plaintiff were undertaken under color of law, and within the scope of their employment." (R. 1, Compl. ¶ 60.)

is named in his official capacity.[3] *Guzman v. Sheahan*, 495 F.3d 852, 860 (7th Cir. 2007) (citing *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990)). Suing a municipal officer in his official capacity is the same as suing the municipality. *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985); *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987). Since the municipality is a named Defendant here, suits against Melody and McCarthy in their official capacities are redundant, and the Court accordingly dismisses Melody and McCarthy in their official capacities from the claim.

## 1. Standing

The Village Defendants first allege a factual challenge to McGreal's assertion of jurisdiction with regards to her Fourth Amendment claim. They contend that McGreal lacks standing to sue because the records at issue belong to her son, Joseph. (R. 23, Village Defs.' Mot. at 3.) According to the Village Defendants, Orland Park requested the subpoena in connection with the arbitration of Joseph's termination as an Orland Park police officer. (*Id.*) The phone number in question was the number Joseph had provided the police department as his own. (*Id.* at 5; R. 23-3, Village Defs.' Mot., Ex. C at Ex. 62.) The Village Defendants claim that the subpoena was issued for the phone records for the months of February and March of 2010, during which time the Orland Park police department was investigating Joseph. (R. 23, Village Defs.' Mot. at 4.) At an arbitration hearing on July 6, 2011, an asset protection analyst from AT&T testified that the phone number for which the subpoena was issued belonged to Joseph

---

[3] In the future, the Court would advise parties to make the relationships defendants have with government entities clear, especially when alleging or defending a § 1983 claim. Here, it is irrelevant: if Melody is named in his individual capacity, he is entitled to qualified immunity from the § 1983 claim. *See Filarsky v. Delia*, 132 S.Ct. 1657, 1667-68 (2012) (holding that a private attorney retained by a municipal government "to assist in conducting an official investigation into potential wrongdoing" is entitled to seek qualified immunity from a Section 1983 claim).

from May 2009 through March 26, 2010. (*Id.* at 3-4; R. 23-2, Village Defs.' Mot., Ex. B at Ex. 28; R. 23-2, Village Defs.' Mot., Ex. B, Arb. Tr. at 362-63.) The Village Defendants allege, and the phone records attached to their motion indicate, that on March 26, 2010, the day Joseph was ordered to produce his phone records for February and March 2010, Joseph's account was closed and the phone number was transferred to McGreal. (R. 23, Village Defs.' Mot. at 4; R. 23-2, Village Defs.' Mot., Ex. B at Ex. 28; R. 23-2, Village Defs.' Mot., Ex. B, Arb. Tr. at 362-63; R. 23-3, Village Defs.' Mot., Ex. C, Arb. Tr. at 714-16; R. 23-3, Village Defs.' Mot., Ex. C at Ex. 59.) In response, McGreal "agrees her son too would have standing," but argues that her status as the owner of the cell phone number when the subpoena was issued in October 2010 gives her ownership of the records associated with the number and confers standing to challenge the subpoena. (R. 48, Pl.'s Resp. at 4.)

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. However, "Fourth Amendment rights are personal rights," and "may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). Even when a litigant is affected by an allegedly illegal search or seizure, she does not have standing to sue unless the act was an infringement of her own Fourth Amendment rights.[4] *United States v. Payner*, 447 U.S. 727, 731-732 (1980). An individual has standing to challenge a search or seizure only when she has a legitimate privacy

---

[4] The Fourth Amendment standing analysis is distinct from the general proposition of traditional standing doctrine. In *Rakas*, the Supreme Court analyzed the two interwined concepts of standing and the scope of an individual's rights under the Fourth Amendment. 439 U.S. 138-40. The Supreme Court ultimately determined that its "insistence that Fourth Amendment rights are personal in nature has already answered many of these traditional standing inquiries, and . . . that the definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *Id.* at 140.

interest in the place searched, or an "expectation of privacy that society recognizes as reasonable." *Minnesota v. Carter*, 525 U.S. 83, 101 (1998) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)); *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988).

Although the phone belonged to McGreal at the time the subpoena was issued, the subpoena mostly sought a release of records that were created and pertained to information from before her ownership of the number.[5] In order to have a legitimate expectation of privacy sufficient to confer standing to object to a search, an individual must have some amount of possession, control, or dominion over the object of the search. In *Koenig*, the Seventh Circuit found that an individual who was neither the sender nor the addressee of a mailed package had no privacy interest in the package, and therefore no standing to allege a Fourth Amendment violation with regards to the search and seizure of the package. 856 F.2d at 846; *see also, e.g.*, *Casella v. Borders*, 649 F. Supp. 2d 435, 439 (W.D. Va. 2009), *aff'd by Casella v. Borders*, 404 F. App'x 800 (4th Cir. 2010) (finding that the plaintiff had no reasonable expectation of privacy in the contents of a cell phone that she owned but had lent to her boyfriend for more than two months because she lacked possession, control, dominion, and "the power to exclude others from accessing the information and pictures stored on the phone," and thus had no standing to challenge a search and seizure of the phone). McGreal is similarly disconnected from the records that were subpoenaed. Prior to March 26, 2010, she was neither the user of the phone nor the payer of the bill. She had no connection to the phone number and thus has no legally cognizable

---

[5] The overlap between McGreal's ownership of the phone, effective March 26, 2010, and the scope of the subpoena, February and March 2010, will be addressed below.

11

privacy interest in the records from that period that would confer standing to allege a Fourth Amendment violation.

McGreal contends that "[o]nce [she] owned the number, she owned the whole thing," (R. 48, Pl.'s Resp. at 4), and that she therefore has rights to the phone records that pre-date her ownership of the number. The Village Defendants argue, and the Court agrees, that the transfer of ownership from Joseph to his mother was a "ruse employed by Joseph to avoid having to produce phone records." (R. 23, Village Defs.' Mot. at 4.) The Court finds that McGreal does not have a legitimate expectation of privacy in the records of the phone's previous owner's usage, and therefore has no standing to sue over the subpoena of those records. *See, e.g., Venerable v. City of Sacramento*, 185 F.Supp.2d 1128, 1134 (E.D. Cal. 2002) (considering a plaintiff's standing under *Rakas* at the motion to dismiss stage); *Disner v. United States*, CIV.A. 12-1302 RMC, 2012 WL 3711900, at *4-*5 (D.D.C. Aug. 29, 2012) (granting a Rule 12(b)(1) motion to dismiss because the plaintiffs had no legitimate privacy interest in the funds or records they had transferred to another party). The Village Defendants' motion to dismiss for lack of standing is granted as it pertains to the records for February 1, 2010, through March 25, 2010.

With regards to the period after March 25, 2010, McGreal's complaint does not specifically allege that she began using the phone as soon as it was transferred into her name. If McGreal used the phone during the March 26 through March 31, 2010 period, she would have a legitimate privacy interest in the records from that period sufficient to confer standing to challenge the search and seizure of the records. Drawing all reasonable inferences in her favor, the Court finds that McGreal has standing to sue based on the records that were subpoenaed pertaining to the period between March 26, 2010, and March 31, 2010.

## 2. Failure to state a claim

In addition to their standing argument, the Village Defendants contend that McGreal does not allege facts sufficient to state a cognizable Section 1983 claim. (R. 23, Village Defs.' Mot. at 5.) Section 1983 is a remedial provision designed to create a cause of action when an officer acting under color of state law deprives an individual of a right, privilege, or immunity guaranteed by the Constitution or laws of the United States. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). To state a claim under Section 1983, a plaintiff must show that she was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). McGreal claims that, pursuant to Orland Park's "policy and practice," "one or more of the Defendants" violated her rights under the Fourth Amendment. (R. 1, Compl. ¶¶ 32-34.) The Fourth Amendment of the United States Constitution protects the right of persons "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A Fourth Amendment inquiry involves a determination that a search or seizure actually occurred, and a determination that the search or seizure was unreasonable. *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010).

The Village Defendants do not contest that there was a search and seizure of the phone records. Rather, they contend that their request of the subpoena for McGreal's phone records was reasonable because it was authorized by the Illinois Uniform Arbitration Act ("UAA"), 710 Ill. Comp. Stat. 5/1, *et seq.* (2012). (R. 23, Village Defs.' Mot. at 5-6.) McGreal asserts that the subpoena request was unreasonable. (R. 1, Compl. ¶ 33.) She contends that she is not subject to a pre-hearing subpoena *duces tecum* because she is not a party to the collective bargaining

13

agreement between Orland Park and the Orland Park police union. (*Id.* ¶ 17.) She cites the

FAA, 9 U.S.C. § 7, as "expressly exclud[ing] an arbitrator from compelling a non-party witness

to participate in pre-arbitration discovery."[6] (*Id.* ¶ 18.) The Village Defendants argue that the

FAA is not applicable to this case because Stoia was acting in the context of an arbitration

between Orland Park and one of its employees. (R. 23, Village Defs.' Mot. at 6.) The Village

Defendants assert that such arbitrations are governed by state law, specifically by the UAA, 710

Ill. Comp. Stat. 5/7(a) (2012), pursuant to the Illinois Public Labor Relations Act ("IPLRA"), 5

Ill. Comp. Stat. 315/8 (2012). (*Id.*)

The Village Defendants are correct that an arbitration between Orland Park and its

employees is governed by state law. 5 Ill. Comp. Stat. 315/8 (2012); *cf. N. Ill. Gas Co. v. Airco*

*Indus. Gases, A Div. Of Airco, Inc.*, 676 F.2d 270, 274-75 (7th Cir. 1982) *superseded in*

*unrelated part by statute as stated in In re Bridgestone/Firestone, Inc., ATX, ATX II*, 128 F.

Supp. 2d 1198, 1202 n.4 (S.D. Ind. 2001) (the FAA rather than the Illinois UAA governs

"arbitration provisions in any contract evidencing a transaction in interstate commerce"); *Tim*

*Huey Corp. v. Global Boiler & Mech., Inc.*, 649 N.E.2d 1358, 1361 (Ill. App. Ct. 4th Dist. 1995)

(the FAA governs arbitration provisions when the contract involves interstate commerce). "In

the absence of an agreement to the contrary, arbitration proceedings in Illinois are governed by

the terms of the Uniform Arbitration Act." *Bushell v. Caterpillar, Inc.*, 683 N.E.2d 1286, 1289

---

[6] The Court notes that 9 U.S.C. § 7 does not expressly restrict an arbitrator's subpoena powers. The relevant provision provides that arbitrators "may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." On its face, the provision does not distinguish between party and non-party witnesses, nor does it specify when such summons may be issued.

(Ill. App. Ct. 3d Dist. 1997). Although the UAA largely tracks the FAA and courts may look to application of the FAA to guide their application of the UAA, *see N. Ill. Gas Co.*, 676 F.2d at 275, Illinois law is clear on the present issue. Unlike the FAA, which may or may not allow for non-party pre-arbitration document production,[7] the UAA expressly allows arbitrators to "issue subpoenas for the attendance of witnesses *and for the production of books, records, documents and other evidence.*" 710 Ill. Comp. Stat. 5/7(a) (emphasis added); *Sch. Dist. No. 46, Kane, Cook, & DuPage Counties v. Del Bianco*, 215 N.E.2d 25, 31 (Ill. App. Ct. 2d Dist. 1966); *see also Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 407 n.1 (3d Cir. 2004) (explaining that the language in some states' versions of the UAA "explicitly grant arbitrators the power to issue pre-hearing document production subpoenas on third parties"). The subpoena *duces tecum* was within the arbitrator's scope of authority pursuant the UAA, 710 Ill. Comp. Stat. 5/7(a).

Even though the subpoena *duces tecum* was within the arbitrator's authority by law, it must still be relevant and reasonable to avoid violating the Fourth Amendment. *See United States v. Reno*, 522 F.2d 572, 575-76 (10th Cir. 1975) (the grand jury subpoena *duces tecum* of

---

[7] The Circuits are split as to whether the FAA authorizes arbitrators to compel pre-hearing document discovery from third parties. The Sixth and Eighth Circuits have held that such power is implicit in the FAA's grant of power to compel document production for a hearing. *See In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 870-71 (8th Cir. 2000); *Am. Fed'n of Television & Radio Artists, AFL-CIO v. WJBK-TV (New World Commc'ns of Detroit, Inc.)*, 164 F.3d 1004, 1009 (6th Cir. 1999). The Second, Third, and Fourth Circuits have read the "to bring with him" language in Section 7 of the FAA more narrowly to limit an arbitrator's authority to compel non-parties to produce documents only when they are testifying before the arbitrator. *See Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 216-17 (2d Cir. 2008); *Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 408-09 (3d Cir. 2004); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 275-76 (4th Cir. 1999). The Seventh Circuit has not addressed the issue.

corporate records was relevant, reasonably particular, and covered a reasonable period of time); *Newmark & Co. v. Wirtz*, 330 F.2d 576, 577 (2d Cir. 1964) (the administrative subpoena *duces tecum* of corporate records was authorized by law and reasonable in scope and the manner in which the records were to be delivered); *McPhaul v. United States*, 364 U.S. 372, 381-82 (1960) (the Congressional committee subpoena of an organization's records was not unduly broad); *Okla. Printing Press Pub. Co. v. Walling*, 327 U.S. 186, 208 (1946) (the administrative subpoena *duces tecum* of corporate records was authorized by law and relevant). In modern caselaw this is not a high hurdle.

The Supreme Court has consistently "held that the application of the Fourth Amendment depends on whether the person invoking its protections can claim a justifiable, a reasonable, or a legitimate expectation of privacy." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (internal quotations omitted) (citing *Katz*, 389 U.S. 347; *Rakas*, 439 U.S. at 143; *United States v. Chadwick*, 433 U.S. 1, 7 (1977); and others). This is an objective inquiry—a plaintiff's subjective expectation of privacy is not protected by the Fourth Amendment unless it is an expectation the law objectively recognizes as legitimate. *Smith*, 442 U.S. at 743. Individuals have a greater reasonable expectation of privacy than corporations, but subpoenas *duces tecum* are rarely found to be so intrusive as to violate the Fourth Amendment. *See, e.g., Ryan v. United States*, 379 U.S. 61, 62 (1964) (the IRS subpoena of an individual taxpayer's records did not require probable cause); *Doe v. United States*, 253 F.3d 256, 264-65 (6th Cir. 2001) (the administrative subpoena of a doctor's professional, personal, and financial records was authorized by law and reasonably relevant). However, as a third party to the arbitration, McGreal may have a greater reasonable expectation of privacy than the target of an investigative subpoena

*duces tecum* would. *See, e.g., In re Gimbel*, 77 F.3d 593, 599 (2d Cir. 1996) ("non-parties will generally be accorded more protection from sweeping administrative subpoenas" because they have a greater reasonable expectation of privacy than parties) (internal citations and quotation marks omitted); *Burka v. New York City Transit Auth.*, 110 F.R.D. 660, 665 (S.D.N.Y. 1986) ("a non-party having no stake in the litigation retains a greater expectation of privacy" than a party to the litigation). Whether the subpoena intruded upon a legitimate expectation of privacy depends largely on the substance of the records it sought.

In *Smith*, the Court held that an individual has no legitimate or reasonable expectation of privacy in the phone numbers he dials. 442 U.S. at 742. The basis for this holding was that a user must be aware that by placing the call, he was voluntarily conveying numerical information to either the live operator or the modern counterpart, automatic switching equipment, as was necessary to complete the call. *Id.* at 744-45. Additionally, "most people" were presumed to be aware that pen registers were regularly used by phone companies to identify individuals who made annoying or obscene calls. *Id.* at 742. While modern cellular telephone users may not think of the equipment necessary to connect their calls, anyone who has seen a cell phone bill is aware that every number they call or text, or receive calls or texts from, is recorded. The *Smith* Court distinguished *Katz* by contrasting the legitimate expectation of privacy individuals have in the *contents* of their phone calls with the lack of privacy they expect in the numbers they dial. *Id.* at 743; *see also United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 313 (1972) (stating that *Katz* implicitly recognized that the Fourth Amendment protects "conversational privacy").

The factual record is unclear as to whether McGreal had an objectively reasonable

expectation of privacy in the released records pertaining to the period between March 26 and March 31, 2010. Neither McGreal's complaint nor the Village Defendants' motion clearly allege the nature of the records that Orland Park requested and that AT&T released. McGreal's complaint contains a large number of references to her telephone and text messaging records, and indeed the claims are all based on the release of the records. McGreal did not attach the records at issue to her complaint, but the Village Defendants attached the records to their motion to dismiss. (R. 23-2, Village Defs.' Mot., Ex. B at Exs. 28-34.) Because the records are referred to in McGreal's complaint and are central to her claim, the Court will consider them when ruling on the motion to dismiss. *Wright*, 29 F.3d at 1248. These records appear to consist of logs of numbers to and from which calls were received and placed and numbers to and from which text messages were received and sent. (R. 23, Village Defs.' Mot., Ex. B at Exs. 31-34). However, neither party specifies whether the records attached to the Village Defendants' motion were the only records released or whether more comprehensive records were also released. Complaints by *pro se* plaintiffs are to be liberally construed and are held to a less stringent standard than those drafted by attorneys, *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006), and the Court must draw all reasonable inferences in McGreal's favor, *Reger Dev.*, 592 F.3d at 763. Based on a liberal construction of McGreal's complaint, the Court can infer that some of the records that were released may have violated McGreal's right to "conversational privacy" by exposing the content of her text or voice messages. *U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. at 313. Because the Village Defendants have conceded that there was a search and seizure of McGreal's phone records, and because McGreal may have a reasonable expectation of privacy in some of those records, the Court finds that she has plausibly suggested a right to relief based on

the release of the records pertaining to March 26 through March 31, 2010.

### 3. Qualified immunity

Finally, the Village Defendants argue that they are entitled to qualified immunity. (R. 23, Village Defs.' Mot. at 6.) Of the Village Defendants, only McCarthy is potentially eligible for qualified immunity—municipalities are not entitled to good-faith immunity from Section 1983 violations, *Owen v. City of Independence, Mo.*, 445 U.S. 622, 649 (1980), and, as discussed above, Melody was named only in his official capacity. In *Harlow v. Fitzgerald*, the Supreme Court established that government officials performing discretionary functions are immune from personal liability as long as their conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known" when they acted. 457 U.S. 800, 818 (1982). McGreal alleges that, by "seeking to subpoena the cell phone records of a private citizen," the Village Defendants violated her Fourth Amendment rights and thus are not entitled to qualified immunity. (R. 48, Pl.'s Resp. at 5-6.) The Village Defendants contend that their conduct was "objectively reasonable in light of the authority given to the Arbitrator to issue subpoenas under the IPLRA and the UAA." (R. 23, Village Defs.' Mot. at 7.)

The Seventh Circuit has warned that qualified immunity is generally not grounds for dismissal under Rule 12(b)(6). *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). "Because an immunity defense usually depends on the facts of the case," and because plaintiffs are "not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity," dismissal at the pleading stage is typically inappropriate. *Id.* (quoting *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)). However, courts have been admonished to resolve qualified immunity issues at the earliest possible stage of litigation.

*Hunter v. Bryant,* 502 U.S. 224, 227 (1981). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan,* 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). When a qualified immunity defense is presented in a motion to dismiss, courts "apply the standard of review under Rule 12(b)(6), accept[ing] as true the well-pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations." *Stevens v. Umsted,* 131 F.3d 697, 706 (7th Cir. 1997) (quoting *Wilson v. Formigoni,* 42 F.3d 1060, 1064 (7th Cir. 1994)) (internal quotation marks omitted). Qualified immunity can be grounds for a Rule 12(b)(6) dismissal when the allegations of the complaint, taken as true, fail to allege the violation of a clearly established right. *Landstrom v. Ill. Dep't of Children & Family Servs.,* 892 F.2d 670, 675 (7th Cir. 1990).

The Supreme Court has set out a two-pronged inquiry to guide courts in resolving this issue: (1) determining whether the facts alleged make out a constitutional violation; and (2) determining whether the constitutional standards were clearly established at the time of the alleged misconduct. *Pearson,* 555 U.S. at 232-42 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). In *Pearson,* the Supreme Court held that district courts have the discretion to address these questions in whatever order they deem appropriate. 555 U.S. at 236. Courts often address the second prong first in order to avoid having to pass on the constitutionality of an officer's particular actions—for if a right is not clearly established, a reasonable officer cannot be said to have known about it. *See Forman v. Richmond Police Dep't,* 104 F.3d 950, 958 (7th Cir. 1997). Addressing the second prong first allows courts to dismiss cases on qualified immunity grounds pursuant to Rule 12(b)(6). *See Haley v. City of Boston,* 657 F.3d 39, 47 (1st Cir. 2011) (Post-*Pearson,* "[i]f it is plain that a constitutional right is not clearly established, a court may grant the

requested immunity without undertaking the essentially academic exercise of ascertaining whether the specific facts depict a constitutional violation.") (quoting *Pearson*, 555 U.S. at 236-37) (internal quotation marks omitted). The plaintiff has the burden of proving that the right allegedly violated was clearly established. *Id.* at 957–58. To meet this burden, the plaintiff need not point to a case finding the same exact action to be unlawful or a case that is "on all fours" with the present set of facts and circumstances. *Id.* at 958. A "clearly analogous" case decided before the officer's action or inaction in the present case is sufficient to confirm that a right is clearly established. *Id.* Examined in light of an analogous case, the unlawfulness of the officer's actions must have been "apparent" at the time he took them. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) (In a footnote, the Supreme Court noted that if "the actions the [plaintiffs] allege [the defendant] to have taken are actions that a reasonable officer could have believed lawful . . . then [the defendant] is entitled to dismissal prior to discovery." 483 U.S. at 646 n.6); *see also Harrell v. Cook,* 169 F.3d 428, 433 (7th Cir. 1999).

Neither in her *pro se* complaint, nor in her response to the Village Defendants' motion, in which she was represented by counsel, did McGreal point the Court to any case that might clearly establish that seeking the subpoena of a private citizen's cell phone records constitutes a Fourth Amendment violation. The records sought were relevant to the arbitration, and the scope of the arbitration, if overbroad by five days, was reasonable. The Court is unable to find even a "clearly analogous" case that would have put the Village Defendants on notice that requesting a subpoena of an individual's cell phone records may constitute a constitutional violation. *See, e.g., Padilla v. Yoo,* 678 F.3d 748, 766-68 (9th Cir. 2012) (reversing the denial of the defendant's motion to dismiss on grounds of qualified immunity because at the time the defendant acted it

21

was not "sufficiently clear that every reasonable official would have understood" that his actions amounted to torture); *Eldredge v. Town of Falmouth, Mass.*, 662 F.3d 100, 107 (1st Cir. 2011) (affirming a Rule 12(b)(6) dismissal on qualified immunity grounds); *Constitutional Guided Walking Tours v. Independence Visitor Ctr. Corp.*, 454 Fed. App'x 118, 122 (3d Cir. 2011) (affirming a Rule 12(b)(6) dismissal on qualified immunity grounds) (citing *Pearson*, 555 U.S. at 231); *see also, e.g., S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 854-55 (N.D. Ill. 2010) (granting a motion to dismiss on qualified immunity grounds because there was no clearly established precedent regarding the constitutionality of the alleged violation); *Treiber v. Rompala*, No. 01 C 5049, 2002 WL 1467673, at *5 (N.D. Ill. July 9, 2002) (granting defendant's motion to dismiss on the grounds of qualified immunity because the pleading offered "no legal precedent showing, or even suggesting, that it is clearly established that Plaintiff's constitutional rights were relevant to this interaction"). Accordingly, the Court finds that McCarthy is entitled to qualified immunity in his individual capacity.

The Court acknowledges that dismissing a claim on the basis of qualified immunity is unusual, although increasingly encouraged by the Supreme Court. *E.g., Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) ("Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'") (quoting *Pearson*, 555 U.S. at 236-37) (reversing the denial of a Rule 12(b)(6) motion to dismiss on grounds of qualified immunity). In *Tamayo*, the Seventh Circuit reversed a dismissal on grounds of qualified immunity because "[t]aking all facts pleaded in [the plaintiff's] complaint as true, the defendants violated a clearly established constitutional right." 526 F.3d at 1090. *See, e.g., Backe v. LeBlanc*, No. 11-40460,

2012 WL 3517361, at *2 (5th Cir. Aug. 16, 2012) (because "one of the most salient benefits of qualified immunity is protection from pretrial discovery," a court may defer its qualified immunity ruling only if the "pleadings assert facts which, if true, would overcome the defense of qualified immunity") (internal quotation marks omitted). Here, the Court concludes that the facts alleged in the complaint, taken as true, do not make out a clearly established constitutional violation. There is no need to seek supplemental factual information because whether the plaintiff has alleged the violation of a clearly established right is a "purely legal question." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). The action giving rise to the Section 1983 claim—the request for a subpoena of McGreal's cell phone records pursuant to an arbitration—is not a clearly established constitutional violation. Accordingly, McCarthy is entitled to qualified immunity.

In sum, after considering all of the Village Defendants' arguments, the Court concludes that McGreal's Section 1983 claim based on the release of the records pertaining to the period of March 26 through March 31, 2010 is sufficient to survive the motion to dismiss. McCarthy is entitled to qualified immunity, but the claim remains against Orland Park. The Court therefore dismisses McCarthy from the claim and denies the Village Defendants' motion to dismiss Count I against Orland Park.

### C. McGreal's intrusion upon seclusion claim (Count IV)

In Count IV, McGreal alleges that "the conduct of one or more Defendant . . . constituted unjustified and offensive invasion of [her] privacy," and that such conduct was willful and wanton. (R. 1, Pl.'s Compl. ¶ 44.) Specifically, Orland Park requested a subpoena of her phone records, Stoia issued the subpoena, and AT&T complied. (*Id.* ¶ 15.) As a result, McGreal claims

to have "suffered injury, including emotional distress." (*Id.* ¶ 44.) The Village Defendants argue that Count IV should be dismissed because McGreal lacks standing and because she fails to allege facts legally sufficient to state a claim upon which relief may be granted. (R. 23, Village Defs.' Mot. at 5, 8-10.)

### 1. Standing

The Village Defendants argue that McGreal lacks standing to bring an intrusion upon seclusion claim. In general, a plaintiff may not bring a suit to advance the legal rights or interests of a third party. *Barrows v. Jackson*, 346 U.S. 249, 255 (1953). "Standing requires injury in fact to a legally cognizable interest." *Almgren v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 642 N.E.2d 1264, 1269 (Ill. 1994). As discussed above with regards to McGreal's Section 1983 claim (Count I), McGreal had no legally cognizable interest in the phone records that form the basis of her claim alleged in Count IV except for those pertaining to the period of March 26 through March 31, 2010. Count IV is dismissed with regards to the records from February 1 through March 25, 2010, for lack of standing.

### 2. Failure to state a claim

The Village Defendants next argue that McGreal's intrusion upon seclusion claim must be dismissed because her complaint fails to allege the necessary elements of an intrusion upon seclusion claim. (R. 23, Village Defs.' Mot. at 10.) Intrusion upon the seclusion of another is a state tort based on an invasion of privacy. *See Duncan v. Peterson*, 835 N.E.2d 411, 422 (Ill. App. Ct. 2d Dist. 2005). While the Illinois Supreme Court has not explicitly recognized the tort of intrusion upon the seclusion of another, all of the Illinois Appellate Courts have recognized such a tort. *See Burns v. Masterbrand Cabinets, Inc.*, 874 N.E.2d 72, 77 (Ill. App. Ct. 4th Dist.

24

2007); *Johnson v. K Mart Corp.*, 723 N.E.2d 1192, 1196 (Ill. App. Ct. 1st Dist. 2000); *Benitez v. KFC Nat'l Mgmt. Co.*, 714 N.E.2d 1002, 1006-07 (Ill. App. Ct. 2d Dist. 1999); *Davis v. Temple*,673 N.E.2d 737, 744 (Ill. App. Ct. 5th Dist. 1996); *Melvin v. Burling*, 490 N.E.2d 1011, 1013 (Ill. App. Ct. 3d Dist. 1986); *see also Allen v. Transam. Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997) (where the state supreme courts have not ruled on an issue, decisions of state appellate courts control).

Liability under the tort of intrusion upon the seclusion of another "depends upon some type of highly offensive prying into the physical boundaries or affairs of another person." *Lovgren v. Citizens First Nat'l Bank*, 534 N.E.2d 987, 989 (Ill. 1989) (internal citation omitted). Thus, in order to state a claim, the plaintiff must allege the following elements: "(1) an unauthorized intrusion or prying into the plaintiff's seclusion, (2) the intrusion must be offensive or objectionable to a reasonable man, (3) the matter upon which the intrusion occurs must be private, and (4) the intrusion causes anguish and suffering." *Burns*, 874 N.E.2d at 77. The Village Defendants argue that McGreal's allegations do not satisfy the elements necessary for this claim, specifically the private fact element. (R. 23, Village Defs.' Mot. at 8.) The element of private facts is a predicate for the other three elements of the tort. *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 1st Dist. 2004). "Without private facts, the other three elements of the tort need not be reached. Because the analysis begins with the predicate, private facts, it also ends there if no private facts are involved." *Id.* The Village Defendants allege that McGreal fails to meet the private fact element because the records are not sufficiently private or personal. (R. 23, Village Defs.' Mot. at 10.)

The *Busse* court held that individual pieces of information such as names, addresses, cell

phone numbers and particulars of cell phone use, and even Social Security numbers are not "facially revealing, compromising or embarrassing," and so do not fulfill the privacy element of an intrusion upon seclusion claim. 813 N.E.2d at 1018. While such information may be personal, it is not private. *Id*; *see also Cooney v. Chi. Pub. Sch.*, 943 N.E.2d 23, 32 (Ill. App. Ct. 1st Dist. 2010), *appeal denied*, 949 N.E.2d 657 (2011); *cf. Johnson*, 723 N.E.2d at 1196-97 (holding that the disclosure of "extremely personal information" about plaintiffs' "family problems, health problems, sex lives, future work plans, and attitudes about defendant" constituted a claim for intrusion against seclusion).

As discussed with regards to Count I, the records AT&T released to Orland Park, as attached to the Village Defendants' motion to dismiss, appear to be simply logs of numbers to and from which calls were received and placed and numbers to and from which text messages were received and sent. (R. 23-2, Village Defs.' Mot., Ex. B at Ex. 31-34.) A bare list of phone numbers is not sufficiently private to meet the elements of an intrusion upon seclusion claim. None of the information revealed in these phone records is "facially revealing, compromising or embarrassing." However, McGreal's complaint does not clearly allege the nature of the records Orland Park requested and AT&T released. Construing McGreal's *pro se* complaint liberally leaves open the possibility that the contents of McGreal's phone calls or text messages, which would be "extremely personal," were also released. *See Johnson*, 723 N.E.2d at 1196-97. The Court thus finds that McGreal has alleged facts sufficient to meet the private facts element of her intrusion upon seclusion claim.

The Court turns now to the other elements of the tort alleged in Count IV. Under Illinois law, proving a claim of intrusion upon seclusion requires the plaintiff to show that the intrusion

into her privacy caused "anguish and suffering." *Burns*, 874 N.E.2d at 77. The allegations in

Count IV are not clear as to the cause or scope of McGreal's alleged injury. In her complaint,

McGreal states: "the conduct of one or more Defendant . . . constituted unjustified and offensive

invasion of Plaintiff's privacy, undertaken willfully and wantonly, Plaintiff has suffered injury,

including emotional distress." (R. 1, Compl. ¶ 44.) The rest of the complaint provides additional

conclusory allegations but no additional facts to support her "anguish and suffering." McGreal's

unsupported statement that she suffered injury is not sufficient to plausibly suggest that she is

entitled to relief based on a claim of intrusion upon seclusion. *See, e.g., Minter v. AAA Cook

Cnty. Consolidation, Inc.*, No. 02 C 8698, 2004 WL 1630781, at *7 (N.D. Ill. July 19, 2004)

(plaintiff's statement that she felt "angry, humiliated, frustrated and embarrassed" was not

sufficient evidence of anguish and suffering to support an intrusion upon seclusion claim); *see

also Acosta v. Scott Labor LLC*, 377 F.Supp.2d 647, 652 (N.D. Ill. 2005) (intrusion upon

seclusion claim did not survive motion to dismiss when it failed to "allege sufficient facts to

satisfy the privacy element of the tort"); *Adkins v. Kelly-Springfield Tire Co.*, No. 97 C 50381,

1998 WL 744052, at *4 (N.D. Ill. Oct. 14, 1998) (intrusion upon seclusion claim did not survive

motion to dismiss because the complaint failed to allege facts sufficient to satisfy the first

element, unauthorized prying). Because McGreal's allegations fail to plead the necessary

elements of an intrusion upon seclusion claim, the Court grants the Village Defendants' motion

to dismiss Count IV.

### E.    McGreal's defamation *per se* claim (Count VI).

In Count VI, McGreal alleges a state law defamation *per se* claim. She asserts that "[o]ne

or more of the Village Defendants made public statements against [her] veracity and integrity."

(R.1, Compl. ¶ 51.) Specifically, McGreal contends that Defendants "alleg[ed] that [she] has made 'misrepresentations', 'concealed lies', 'schemed', had been 'untruthful', 'made false statements', 'engaged in a conspiracy', was 'disingenuous', and made 'dishonest attempt.'"[8] (*Id.* ¶ 30.) The complaint does not clarify from where these snippets are quoted, when they were made, or how they were published. The Village Defendants argue that this claim should be dismissed because: (1) McGreal fails to meet the defamation *per se* pleading standard; (2) the Tort Immunity Act, 745 Ill. Comp. Stat. 10/2-107, entitles Orland Park to absolute immunity; and (3) the Tort Immunity Act, 745 Ill. Comp. Stat. 10/2-210, entitles McCarthy and Melody to qualified immunity. (Village Defs.' Mot. at 10-14.) McGreal concedes in her response that Orland Park is entitled to absolute immunity against her defamation *per se* claim, (R. 48. Pl.'s Resp. at 4), and the Court thus dismisses Count VI as against Orland Park.

To establish a claim for defamation, a plaintiff must allege sufficient facts to show that the defendant "made a false statement concerning [the plaintiff], that there was an unprivileged publication to a third party with fault by the defendant, which caused damage to the plaintiff." *Krasinski v. United Parcel Serv., Inc.*, 530 N.E.2d 468, 471 (Ill. 1988). To prove publication, the plaintiff must show that "the defamatory statements were communicated to some person other than plaintiff." *Pandya v. Hoerchler*, 628 N.E.2d 1040, 1043 (Ill. App. Ct. 1st Dist. 1993). For a statement to be defamatory *per se* in Illinois, it must fall under one of five categories:

> (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a

---

[8] The complaint does not indicate the source of these quotations, although McGreal's response to the Village Defendants' motion suggests that the allegedly defamatory statements were made in Orland Park's sur-reply to her motion to quash the subpoena in the arbitration proceedings. (R. 48, Pl.'s Resp. at 2.)

person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

*Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839 (Ill. 2006). When filed in federal court, a claim for defamation *per se* is held to "the usual rules for notice pleading established by Rule 8." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003). Thus, in order to survive a Rule 12(b)(6) motion to dismiss in federal court, a defamation *per se* claim must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). The complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

McGreal claims that the allegations have damaged her personal and professional reputation because "veracity and integrity" are required traits in her nursing profession and political career. (R.1, Compl. ¶¶ 51-52.) In order to constitute defamation *per se* under the third category, which is what McGreal seems to be alleging, the accusations must attack McGreal's integrity in performing her employment duties. *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005). Attacks on McGreal's personal integrity and character are not defamation *per se*. *Id.* at 858. The allegations in the complaint are words and phrases without any context; no clues are given as to when, how, or to whom the allegedly defamatory language was allegedly published. The Court is unable to determine whether the accusations constitute defamation *per se*, and McGreal did not plead a claim for defamation *per quod* in the alternate. A plaintiff must provide more than "abstract recitations of the elements of a cause of action or conclusory legal

statements." *Swanson*, 614 F.3d at 405 (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir.

2009). Aside from the snippets of accusations quoted above, the entirety of McGreal's

defamation *per se* claim recites that

> [o]ne or more of the Village Defendants made public statements against the
> Plaintiff's veracity and integrity. Plaintiff has worked hard and earned herself an
> impeccable personal and professional reputation which the defendants have damaged
> without cause. Veracity and integrity are two required traits for [her professions].
> The defendant's actions have resulted in the Plaintiff having suffered significant
> injury to her reputation without cause, as well as emotional distress.

(R. 1, Compl. ¶¶ 51-52.) This "abstract recitation" combined with the context-free quotes do not

provide fair notice to the Village Defendants of the grounds upon which McGreal's claim for

relief rests. McGreal has failed to "present a story that holds together." *Swanson*, 614 F.3d at

404. Even drawing all reasonable inferences in favor of McGreal and reading the *pro se*

complaint liberally, the Court is unable to find that McGreal has alleged facts sufficient to make

out a claim for defamation *per se*. *See, e.g.*, *Adams v. Pull'R Holding Co., LLC.*, No. 09 C 7170,

2010 WL 1611078, at *5 (N.D. Ill. Apr. 20, 2010) (recognizing that liberal pleading standards do

not require plaintiffs to include the allegedly defamatory statements verbatim in the complaint,

but that "[i]t is, however, necessary that the complaint allege the basic substance of the

statements so that the defendant is placed on notice of the claim," and finding that general

allegations failed to state a cognizable claim because they didn't provide "notice of the actionable

statements and the persons or entities to whom they were published"). Accordingly, the Court

grants the Village Defendants' motion to dismiss Count VI for failure to state a claim upon

which relief may be granted.

**F.** **McGreal's *respondeat superior* claim (Count V) and indemnification claim (Count VII)**

30

McGreal alleges that Orland Park is liable for the tortious acts committed by McCarthy and Melody under a theory of *respondeat superior*, (R. 1. Compl. ¶ 49), and through Illinois indemnification law, (*Id.* ¶¶ 54-56). McGreal does not specify which law she is relying on to provide indemnification. The doctrine of *respondeat superior* allows an employer to be held vicariously liable for his employee's wrongdoing. *Moy v. Cnty. of Cook*, 640 N.E.2d 926, 928 (Ill. 1994). Because the doctrine is based on a transfer of liability, "the employer cannot be held liable under a *respondeat superior* theory where the employee is free of responsibility." *Fustin v. Bd. of Educ. of Cmty. Unit Dist. No. 2*, 242 N.E.2d 308, 312 (Ill. App. Ct. 5th Dist. 1968). Additionally, the Illinois Tort Immunity Act provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 Ill. Comp. Stat. 10/2-109. Both the indemnification and the *respondeat superior* claims are dependent on the state law tort claims alleged in Counts IV and VI. Because McGreal failed to allege sufficient facts to make out either of her state tort actions against municipal employees, there is no wrongdoing to indemnify. Counts V and VII are therefore dismissed.

## REMAINING CLAIMS

Municipalities are considered "persons" for Section 1983 purposes and can therefore be subjected to Section 1983 liability. *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, that liability must be direct and not vicarious. *Id.* at 694. A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* Instead, a Section 1983 suit against a municipality is appropriate "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* The Seventh Circuit has

articulated that municipal liability under Section 1983 can be based on:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Abbott v. Vill. of Winthrop Harbor*, 205 F.3d 976, 981 (7th Cir. 2000) (internal quotation marks omitted).

McGreal alleges that the violation of her Fourth Amendment rights were "undertaken pursuant to the Village's policy and practice." (R. 1, Compl. ¶ 34.) Specifically, she contends that Orland Park maintains "policies and practices which were the moving force driving the foregoing constitutional violations." (*Id.* ¶ 57.) She alleges that the "widespread practices" became "*de facto* policy" because policymakers "exhibited deliberate indifference to the problem, thereby effectively ratifying it." (*Id.* ¶ 58.) According to McGreal, Orland Park failed to sufficiently train, supervise, investigate misconduct of, or discipline its employees. (*Id.* ¶ 59.) McGreal does not offer any facts or examples to support these allegations other than the incidents at issue in this case. Although McGreal states many of the appropriate standards for a *Monell* claim, she fails to sufficiently support them; "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While high levels of detail are not necessary at the motion to dismiss stage, McGreal's complaint "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404. McGreal fails to allege such details with regards to her *Monell* claims. However, the Village Defendants fail to raise this issue in their motion to dismiss. The motion argues that the officials are entitled to qualified immunity, (R. 23, Village Defs.' Mot. at

6-7), but it does not argue that Orland Park is immune from liability for McGreal's Section 1983 claims. It would be inappropriate for the Court to address municipal liability *sua sponte*, but the Village Defendants may decide to file a motion for judgment on the pleadings or for summary judgment on this issue.

Similarly, because Stoia filed an answer, all claims remain against him. Without deciding the issue, the Court suggests that he may decide to seek judgment in his favor on absolute or qualified immunity grounds.

## CONCLUSION

For the reasons stated above, AT&T's motion to compel arbitration (R. 26) is GRANTED and the Village Defendants' motion to dismiss (R. 23) is GRANTED in part and DENIED in part. The parties are requested to fully exhaust all settlement possibilities for the issues that remain in this unusual lawsuit on or before October 21, 2012. A status hearing will be held in open court on October 22, 2012 at 9:45 a.m. to set a firm litigation schedule for this case.

ENTERED: _____

**Judge Ruben Castillo**

**United States District Court**

**Dated: September 24, 2012**